Good morning, Your Honors. May it please the Court, thank you for the opportunity to be heard today. As the Court is aware, the case is a debt collection suit involving a mortgage out of Texas under the Texas Debt Collection Act. I'd like to briefly address the issue of the removal and the denial of leave for the Domenio petition. The original petition was filed in state court, as this panel is aware. In the original petition, it referenced the issue of foreclosure. There was an amended petition filed about two weeks later, three weeks later, in state court, that also referenced the issue of foreclosure and added an additional claim of injunction, injunctive relief. At that time, both Green Tree, the appellee currently here, also known as DITEC, and Bank of America were defendants in the case. Neither Bank of America nor Green Tree moved to remove the case within 30 days of the original petition or the amended petition. Well, they removed it as soon as the pleadings reflected that you were claiming over $75,000 of damages. So why is that not timely? Yes, ma'am. It was not a pleading. It was a discovery response. So you are correct. So in the state court, Green Tree did serve discovery, and that's what you're referring to. Those responses came back where a dollar amount was asked for for damages, and those discovery responses is where the dollar amount was more specifically provided, which was not necessarily specifically provided in terms of damages in the petitions. But as the court is aware, it is a law in this circuit and has been for quite some time that the issue in injunctive relief cases as well as foreclosure cases is the value of the property and the value of the right to occupy the property or the value of the note all determine the amount in controversy for jurisdictional purposes. What's the amount of your claim now after all these years? Well, the note and the property, the note at the time was around $200,000. It's about $270,000 or $280,000 now. So it was all of the property, right? There never was a foreclosure. That is correct. That is correct. But what has happened is the note balance has increased by $80,000 due to what we say was the underlying misactions and misdeeds of the debt collector. But on the issue of the removal, Your Honor, the key there is that in Green Tree's own notice for removal, they specifically state that the issue of the case is foreclosure of the property. So that was evident from the filing of the original petition in state court. It had nothing to do with the discovery responses. So in the original petition and the amended petition filed in state court referencing foreclosure and in Green Tree's notice of removal some 109 days later, they specifically state and judicially admit that foreclosure of the property is at issue. There was nothing in those discovery responses that even mentioned the issue of foreclosure of the property. So they didn't come to that conclusion by looking at the discovery responses, which is what they're telling the court, that the discovery responses were the actual damages were finally itemized and clearly were over $75,000. That was the first they'd ever known that the jurisdictional threshold was breached, and that's simply not the case. We believe that the court cannot disregard their admission that, quote, foreclosure proceedings on the property are at issue, and that's what they stated in their notice for removal. That, again, was of record 109 days after the filing of the original petition and 91 days after filing of the amended petition, both of which are well in excess of 30 days. But the original petition that was filed did not include an amount. That is correct, Your Honor, and they specially accepted to it, and then therefore an amended petition was filed three weeks later stating $100,000 or less to that point specifically. So the amended petition did say $100,000 or less. To comply with a Texas state rule that requires that or less doesn't tell us anything. But that's a max rather than a min, and isn't that the problem? Well, you know, I think it's a bad state rule for issues just like this. I mean, you have to say $100,000 means, you're correct, it could mean a dollar, but it could also be $99,000. Right, and so then we don't have a definitive answer. If they had removed on that basis, y'all could have come in and said, well, it didn't say $75,000. We said $100,000 or less, which could be a dollar. I agree, but I think the cases in this court has held that, you know, you can affirmatively disavow the $75,000 threshold, and that wasn't in this case. And if you don't do that, then it's fair game to go above it. So, but in any event, the case law here and even out of the Supreme Court in the Hunt case that we cited in our brief is the amount of controversy for jurisdictional purposes is going to be the value of the property or the right to occupy the property or the value of that note. And nothing in the discovered responses addressed that. That was there in the original petition from day one, the issue of foreclosure, and they admitted that in their notice of removal. With regard to, as the Court is aware, there was an effort to amend the pleadings in the, during the case, just the Court, this Court has made it very clear in the Mayo case in 2004, we cited in our brief, that the liberal pleading standards of 15A can be somewhat misleading to district courts because the use of the term discretion is not as broad as district courts may at times try to apply. And this Court in Mayo has made it very clear that that does not, that there's going to be some parameters on that. The district court denied the attempt to amend the pleading based upon a finding of undue delay and undue prejudice. With regard, let me speak to the undue prejudice first of all. Undue prejudice was not pled by the Green Tree in its objection to that amendment. It wasn't even pled. So, therefore, there is no, there was no argument, there was no showing of undue prejudice by the appellee whatsoever. They did mention a single sentence of just saying allowing the pleading would unduly prejudice the appellee, but there's absolutely no showing as to how that would come about. Well, weren't you adding many new causes of action which would have resulted in the need to take more discovery? We were expanding, Your Honor, you are correct. We were expanding the additional cause of action which was before, which was already before the Court, and we were adding additional causes of action, that is true. But it was filed in the middle of discovery period. There were still five months left before discovery cutoff when we moved for leave to do this. So there is no prejudice. Not a single deposition had been taken at that time. The only written discovery that had been promulgated was what Green Tree had served in the State Court. So there was not any active past, you know, promulgated or responded discovery that would have required an extensive upheaval of discovery process. It was five months before discovery cutoff, six months before the dispositive motion deadline, nine months before trial. So the idea of prejudice is not only was it not pled and shown in Green Tree's, the appellee's response or objection to, it's just simply not borne out by the record. The trial, excuse me, the district court did mention the fact that with regard to finding of undue delay that it had been 17 months since the case was removed before the filing of that motion to leave. Unless we're going to change Texas law on this issue of a modification is not the same thing as a debt collection, how do you win? I mean, putting all this aside, you're in federal court. You didn't get to amend. How do you win this appeal? On the debt collection issue? Well, you've got a merits case and you're starting to run out of time. I would like to hear how you win absent us as a federal court changing Texas law on this modification versus debt collection rubric. Yes, ma'am. That's the federal courts are the ones that have carved out modification discussions. How do you win without us changing case law that binds us? Yes, ma'am. And this is not a modification discussion. In every other case that you're exactly hitting on that's come before the courts, there have been a number of them where the homeowners have been said they have been, you know, misled and so on and so forth in the modification process. Never in those instances was the possibility of a modification a lie, and that's what was here. So this case is extremely similar to the Miller versus BAC home loans case out of this court in 2013 where this court did find the Texas debt collection violation because the lender at that time said they would send a modification packet and they never did. Well, the court properly found that that was an affirmative representation that turned out to prejudice and harm the homeowner, and they were not given the opportunity to even have their home loan considered for modification. So this is not a modification discussion. In this case, this appellee was never going to offer a modification, and that was finally learned in the discovery by their own director of collections. Before you run out of time, you're arguing that the green tree was fraudulently gathering financial information. Did you argue that at court below? If you did, where? We did, Your Honor. Yes, ma'am. In the record at 1268, paragraph 18. What did you say? 1268, paragraph 18.  Yes, ma'am. You can summarize it. Yes, ma'am, that the debt collector had no idea where the previous loan application was. It was submitted to Bank of America when, in fact, we found out later that they had it all along. In the record at 1269, paragraph 29, the debt collector said it had its own modification options for the note and that the separate apart from any sort of hemp modification. In the record at 1269, paragraph 29, the debt collector said the modification was the best option. It went on to say that modification was not just an option or possibility, but rather would be and actually would be available to the homeowners and would be granted if submitted to this survey, this pre-questioning for that. That's establishing a fraudulently gathered financial information? Yes, ma'am. Yes, Your Honor, because the director of their collections admitted in his deposition, and this is at the record at 1336, that there was never going to be a modification offered to a Texas home equity loan, and they had already pre-programmed their computers to deny that based on a corporate policy some two and a half years early back in February 2011. So the corporate policy and the programming of the computers that the collectors were using was going to deny and never offer a modification on a Texas home equity loan, despite the fact that Green Tree was sending letters and its collectors were telling people that modification was an option. That's why this is not a modification discussion. Is there anything in the record that shows that they knew all along that there could not be a modification, or was it something that they discovered later on that, in spite of efforts to try to have a loan modification, they discovered that it was not available? You're speaking, Justice Prado, you're speaking of the debt collector. The debt collector knew all along that its computer program, at all times relevant, was going to never offer a loan modification. Right. But the people you were discussing loan modification with, were they aware all along that modification was not an option? Absolutely not. They were told just the opposite for at least the first five or six months of the interaction. And then about five months into it, the debt collector finally told them that you were not going to ever be available for modification. But then they continued to solicit modification options after that from the homeowner. So for four or five months, there was no disclosure that a modification was never going to be offered. All right. So you knew there was no modification, but you still haven't paid the loan. Is that right? That is correct.  Thank you. You saved some time for rebuttal. Well, I mean, it has been modified. Pardon? The loan has been modified now after the fact. Have you paid it? Yes, ma'am. It's current. Okay. Yes, ma'am. Sorry. May it please the Court. My name is Dick McKinney. I represent DyTek Financial, which was formerly known as Green Tree. So every once in a while you may see the word DyTek or you may see the word Green Tree, but it's the same company. In September 2012, DyTek began servicing the Strong's home equity loan. And it's important to note that at the time they began servicing it, Mr. Strong was behind on his payments, but he has represented to this Court that at that time he could have made up his payments, but instead he wanted a modification. Prior to September 2012, DyTek and many other services The concession that he made at the end, which I had understood to be the fact, does that moot the case, the fact that there was an agreed modification that he's now paying? I would assume so, Your Honor. I guess I'm wondering, because you talked about this $80,000, but if you've agreed to a modification, doesn't that sort of moot that point? Yeah, we Because then we're dealing with what, mental anguish or something? I mean, I'm not understanding what's kind of left of this case. I understand why he's upset. He was put through the wringer, all of that. I get that. But why are we here now? I'll address the issues, okay, but after, once the case was filed, we abated the case for the Texas Supreme Court to make the decision on Sims, and once the Court made the decision on Sims, he applied for modification again. He was granted the modification. So he has obtained his modification. How long ago? He would have, let's see, he filed in November of 2013, and it's my understanding that he began his new modification, I think, in September of 14, and he would have been granted it sometimes towards the end of 14. So, but I will address, I mean, one of the things we did put in our brief was it's our belief that he had a modification, and therefore, you know, it moots everything. But I will address all his issues in case the Court determines that maybe it didn't moot everything. Is he claiming something else, like mental anguish or something like that? What he's claiming is that he's claiming a lot of different things, but it all is based upon the Debt Collection Act, okay? And it's our position that whatever DITEC did, it didn't violate the Debt Collection Act. As a matter of fact, his petition, if you take a look at his amended petition, the only thing that he says in his amended petition that we did was that in correspondence to him, as one of his options, we offered a modification. And these are workout options, basically. Which he ultimately got. Yeah. We can try to give you a modification. We can try to do a reinstatement. We can try to do workout with you. We can try to do a number of different things with you. And one of the things was a modification. And his sole argument against us in his petition is that we knew we would not give him a modification at the time we used the word modification in there. And there's two issues on that. Number one, the reason that servicers at this time, those that chose not to, were not giving modifications on home equity loans, is because there was a belief that if you capitalized the loan, it would put more money into it and it would violate the Texas Constitution. So there was one aspect of Texas, of home equity loans, that they would modify. They wouldn't do it if you needed capitalization. They wouldn't do it if you needed a balloon payment. They wouldn't do it if you needed to have uneven payments. However, if all you needed was a reduction in the interest rate, then that didn't violate the Texas Constitution. And on December the 19th. Even with all these computer codes. Yeah. On December the 19th, what happened was when he, what he did was a survey, okay? And in the survey, you answer certain questions about what you want. And if you recall, at the very start of this argument, what I said was, he had the money, he's representing the court, to catch up on his payments, which means all he would have needed was an interest rate. But he didn't want to do that. He wanted a modification, which would have meant capitalization. So when he goes through this survey, what he's asking for is a capitalization issue. So when the survey goes through, naturally, it turns him down, because we can't do that. And the December 19th, 2013 letter that comes back to him, telling him, sorry, we can't do it, it specifically says in there, we can't do it because we can't capitalize these things, we can't have balloon payments, et cetera. But then at the bottom, it says, you can still look at other options. Who initiated the discussion with regard to modification? Was it you or was it him? I'm not sure, Your Honor. But I'm sure that when they would have called him about past due payments, it would have been brought up, because during that time period and during this time period, servicers and mortgage companies want to let people know about modifications, okay, because that's a way for them to catch up on their payments. It's a way for them to keep their home. If you're able to get a modification, it works out better for everybody. So during this time period, letters would go out about modification, et cetera. But even if there was not even the chance of doing an interest rate reduction for modifications, still, all of these discussions are not debt collection. The Debt Collection Act itself specifically says at 392.01 in its paragraph 5, that a debt collection activity is when you're engaged in an action of collecting a debt. So if you're going to sue, and this is the only cause of action he had, if you're going to sue under the Texas Debt Collection Act, whatever you're suing about has to deal with debt collection. That's not a mortgage. I'm sorry? A mortgage isn't a debt. Yes, a mortgage is a debt. Part of Green Tree's effort, and I'm not going to say that Green Tree is not a debt collector, because part of what they do is debt collection. Okay? Part of what they do is to send out statements saying you owe us this money. Part of what they do is if the people get behind, you send out something that says you're $1,000 behind, you're $1,200 behind. So they do have debt collection activities. Okay? But the law clear, I guess I have some confusion that if it's a debt collection, there are certain things that apply. But if it's a discussion about loan modification, then you don't have to follow these strict rules. And it seems to me that under some circumstances, an attempt to get a loan modification is also an attempt to get a debt paid off. So when does a debt collection and a modification, what's the dividing line, what's a bright line rule, if there is one, that allows the courts or whoever to determine if a loan modification is a debt collection or a debt collection is under another name as an effort to get the money that's owed? There's a number of services that a servicer provides, which is, I guess, the reason for the name servicer. They may pay taxes, okay, because they've collected escrow. It's my position that if they're paying taxes, that's a service they're providing that is not debt collection. Okay? If a customer calls in and says, I'm confused about what's going on with my loan, okay, and they answer their question, that would not be a debt collection service, okay? Someone may call in and say, can you change the date of my payment? That, in my opinion, is not a debt collection activity. A debt collection activity would be when you have debt collectors or you have representatives and they call them and say, you're 20 months, excuse me, you're two months behind on your payment. We want you to pay it. And the reason why I believe that the courts, such as Thompson and Singh and a number of other federal courts, have determined that modification discussions are not debt collection activities is because what they're trying to do in the modification situation is not collect the debt. It's trying to provide a service to the consumer so that he can, so that he can. Pay off the debt? Well, throughout everything in a mortgage, you want the debt paid off, okay? But there are some services that are more clearly acting to collect the debt, as opposed. The argument is he's really not paying the debt. If he's modifying it, he's changing what it is. Right. That's, I think, the argument. Well, you always, with a mortgage, you're always going to pay the debt, okay? It's one way to make it easier to pay the debt, but you're not actually collecting. You're rearranging the debt. And I think the law on the circuit is fairly clear that if it's modification-type discussions, then it's not debt collection. And our position in this situation is that all of these discussions that DITAC had with Mr. Strong were modification-type discussions, whether they were discussions on trying to reinstate a loan or discussions on trying to modify it or discussions on whether to work out a workout plan, whatever. All of those are modification-type discussions. And, therefore, at least according to Thompson, they would not be considered to be debt collection activities that are actionable under the Texas Debt Collection Practice Act. What took so long to get the modification? Initially, you said you couldn't modify this. You mean when he originally got his modification, when he got received? Well, it took a while for the SIMS decision to come down, okay? And once the SIMS decision came down, then he reapplied. And once he reapplied, then the way it works is you do three months of trial payments. You make payments to the servicer. And then after the trial payments are completed, then the modification is then complete and you've got your modified loan. And so all that just takes a little bit of time in order to do that. So does it mean there's less interest or less principle? Well, usually what you do with a modification is that you — The principle will stay the same. And then whatever interest has not been paid during all the time that he didn't make those payments, it will be rolled into the loan as a capitalized amount. To increase the principle? Yes, that's exactly right. What will happen is at the — when the loan is modified, all of that is capitalized and it becomes principle then, yes. So what's been paid? I'm not sure how much he's paid. He's been making — whatever the payments are required under the terms of his modification, he's been making those payments. But not the back payments. Well, what happens is the back payments, the back payments, all of those payments go into a new principle amount, and he pays that new principle amount. So by making his current payments, he is, in effect, making his back payments because all of those were rolled into the modification, and he did that. But the loan is still outstanding? Yes, the loan is still outstanding. I misunderstood what Mr. Strong said. A couple of issues on the removal issue. It's our position, Your Honor, that we were not able to tell that there was a $75,000 amount until we obtained the — But that's an argument that it's a foreclosure case, and foreclosure always implicates a whole process. Well, it's not — sometimes forms mess you up, and we have a form that we use generally when we're doing removals, okay? And if it's stated in the removal itself that this was a foreclosure case, that should not have been in there, okay? And just because we say something is something doesn't make it. You have to look at the petition itself. And if you look at his petition that we removed, it specifically states in there that he is seeking an injunction, okay? But the injunction he's trying to do is, number one, he wants to enjoin us from doing any other fair debt collection practice violations. And number two, he wants to enjoin us to put his principal amount back to what it was a couple of months before. Neither of those would be a $75,000 amount. But he wasn't trying to enjoin the foreclosure. No, he wasn't. He wasn't. There was no foreclosure attempt. No. And so we believe the removal was proper with that. With respect to the amended petition, it's interesting that in his reply in the State court about the amended petition, he says that we will not be prejudiced, we being Bank of America and DITAC, because we and he knew all this stuff that he was going to put in his amended petition back in 2012 and 2013, meaning that he could have in 2012 or 2013 added everything he wanted to put in his amended petition into his original petition, but he chose not to. And the district court properly found that there was undue delay because he had waited all this time to do it. And the other thing was there was a scheduling order that told him when he could file his amended petition or leave to file it. And instead of following the local rules, which would require you to attach it to the pleading, he instead just filed a short motion to amend and waited 30 days or 25 days or so to file the actual amended petition itself so that we could even look at it. And so the court found that that was untimely, too. And as far as undue prejudice, all of a sudden he was adding, I think the original petition was 12 pages and this would have been like 45 pages. He was adding a lot of different things. So that's all, Your Honors. Thank you. Mr. Strong, you have five minutes for rebuttal. Thank you, Your Honor. Justice Prado, the dividing line between debt collection and loan modification discussions is when loan modification is actually in existence a viable option. Here it was a misrepresentation and a lie that it was. So this is a debt collection case. This was a debt collector collecting a debt. Every communication that they had with the homeowner from the outset that they entered the picture and took over servicing demanded payment. Two weeks after they took over the servicing, they set a demand for the entire balance of the note of $234,000 to pay. This was a debt collection. This is a debt collector attempting to collect a debt. At all times, for the first five to four or five months, when it was still unknown that they were never going to offer a modification, they demanded a payment from the homeowner in every single communication, verbally and in writing. And that's in the record. An estimated 10 to 15 times they represented that a modification was an option and they demanded payment until the homeowner submitted to the process of loan modification. So the reason there's been a federal carve-out of instances like this where folks were in discussions with the lender for modifications, the federal carve-out has been that is really not the collection of a debt. It's the renegotiation of the terms of a debt. But in every one of those cases, modification was really a possibility. Never in any of those cases was it later discovered that the lender or the debt collector telling you that loan modification might be a possibility but he really had his computers programmed the entire time to deny it once you submit it to their survey, which is soliciting information about the debtor. But here, do we have a situation where they were negotiating in good faith, not knowing that the Constitution did not allow for it and they did not discover that until later on when they were told, under the law, you can't modify this. So, I mean, it wasn't a situation where they were acting in bad faith and knew it could not happen. The people you were dealing with did think there could be a modification. Does that make a difference? It's reasonable. It does not under the law. Debt collectors, under the Federal Fair Debt Collection Act, as well as the state, you're held accountable for misrepresentations. You don't get a pass for not really into it. It's got to be a misrepresentation, and it was. And that's the federal standard, and it's also the Texas state standard as well. So debt collectors, just to prevent issues like this, are held, as the court knows, you see the cases all the time, they're held to a strict standard, and it's a strict liability standard. If you misrepresent, you misrepresent. Secondly, I don't, for a moment, believe that the record supports that this was a good faith argument about some question about the law. First of all, there was no case or opinion in existence at that time that said you couldn't. This is just simply this debt collector providing, having a corporate policy in place to a year and a half before they took this loan over that they were not going to offer modifications on Texas home equity loans. It had nothing to do with any ambiguity in the case, in the law. There was no case that said you couldn't at that time. And their director of debt collections said they instituted that policy, quote, for their own well-being, to protect the company's interest. Debt collectors cannot make money by stabilizing loans and modification. They make money by collecting debts and getting a fee on the percentage they cover. Justice Haynes, it's not moot. They added $80,000 to the principal amount of this note during this entire episode. You didn't pay, and that's why it's added? Technically correct. But, again, but you would have had to pay it one way or the other. Had we known a month after they took it over that they were never going to offer a modification, it would have been remedied a month to one month, two months, three months. You could have paid it sooner. Or refinanced. But, I mean, this court has an opinion on that very point as well. If the misrepresentation is a misrepresentation, then that's enough, and the homeowner is then robbed of other opportunities. The homeowner doesn't have to carry out and show it's robbed of other opportunities. Refinance, bring it current, go borrow it from a relative, whatever. That doesn't get them off the hook. And that is in this court's opinion in Miller. Lastly, the injunctive relief for foreclosure, it is not as counsel, the threat of foreclosure did exist, and that was in the petition, the threat of foreclosure. It asked for injunctive relief under the Texas Act to bring compliance with the Act, but clearly there was an existing threat of foreclosure. That's why it was put in there. And this idea that forms mess you up on, I can't be bound by my notice, sorry, forms mess up people, but they don't, they mess up the wrong people. Thank you for your time. Thank you. That concludes our oral arguments for today. We'll be in recess until 9 o'clock in the morning.